Totten, J.,
delivered the opinion of the court.
This is an action on the case, in the Common Law and Chancery Court of the City of Memphis. The declaration contains five counts. The first four seek a recovery upon the ground, that the defendant received from the plaintiff, at Memphis, a package of bank bills, to be carried to New Orleans for compensation, and there to be delivered to Paine & Harrison; and that the defendant so carelessly and negligently demeaned himself, that the package was lost. The fifth count is in trover.
The defendant pleaded not guilty; and the proof being closed, the judge charged the jury, “that the facts proven in this cause were not sufficient to entitle the plaintiff to a recovery against the defendant.” No other instructions being given to the jury, they found a verdict for the defendant. A motion for a new trial was overruled, and judgment rendered on the verdict, from which the defendant has appealed in error to this court.
It appears from the bill of exceptions, that in May 1848, plaintiff left with Shaw & Co., at their wharf boat at Memphis, a sealed package, containing $2048 in bank bills, addressed to Paine & Harrison, New Orleans, marked valuable, to be sent by the first good boat going down the Mississippi. *455 Shortly after this, the steamboat Gen. Lafayette, of which defendant was commander and part owner, landed at the wharf boat of Shaw & Co., and one of the firm placed the package in the hands of Mr. Martin, chief clerk of said steamboat, who promised to carry and deliver it at New Orleans. JNTo receipt or bill of lading was given, — nothing was said about compensation. On arriving at New Orleans Mr. Martin placed the package in the hands of a Mr. Vanderslip, to be delivered to Paine & Harrison, instructing him to be careful, for that he supposed it contained money. Vanderslip did not deliver the package, but suppressed and embezzled it. He was not an agent hired on the boat, but was aiding the clerk for accommodation; and was, at that time, of good character.
It was proved to be a common usage and custom for steamboats on the Mississippi, to carry packages- containing bank bills, checks, bills of exchange, and the like, but not usual to charge therefor, yet, in some instances, charges were made. When specie was shipped, it was the usage to charge and to give a bill of lading.
It is argued for the plaintiff, that he is entitled to recover, for that the defendant is liable as a common carrier, for the safe delivery of the package. It is further argued, that he is liable for his careless and negligent conduct, which resulted in its non-delivery.
On the contrary, it is insisted in defence, that the bailment was a mere mandate, without, compensation — that the defendant was bound, only to ordinary diligence, and that such diligence was used in the present case.
It is not denied, but that the defendant was a person engaged in the business of a common carrier, and that his boat was a general ship, not restricted to any particular species of trade. A person may be a common carrier of money as well as of other goods, and bank bills are to be considered, in this respect as well as in many others, as money. Story on Bail- *456 ments, § 495; Kemp vs. Coughtrey, 11 J. R. 109; 12 J. R. 220. It is a material element in this species of contract, that it be for compensation; not that any express agreement to that effect, is necessary, — for it may be as well implied, and the carrier will be entitled to a quantum meruit for it. Bastard vs. Bastard, 2 Shower 129; Allen vs. Sewall, 2 Wend. 340.
And it is upon this principle, the right to compensation, that the liability of the carrier depends, — and that goes to the extent, to make him liable as an insurer; and answerable for accidents, and thefts, and even for a loss by robbery. He is answerable, says Mr. Kent, for all losses which do not fall within the excepted cases of inevitable accident or public enemies. 2 Kent Com. 598.
Assuming that the defendant was a common carrier — that he may be a carrier of bank bills, as well as other property— that no express agreement for compensation was necessary, but that it may be as well implied, and that his liability as carrier, depends not upon any question of diligence, but demands absolute performance or indemnity for loss to the owner of the goods. The question comes merely to this, was the carrier entitled to demand, as upon an implied contract, a quantum meruit for carrying the goods? If so entitled, then he is liable as carrier in the present action; otherwise not.
Nothing was said on the subject of compensation, and if the carrier was entitled to any, it must be upon an implied assumpsit.
This, as we have seen, might very well be, and is, perhaps, very often the case; for carriers do not always stipulate in advance for the rate and terms of compensation. In the absence of any express agreement, he is entitled to demand and receive what is usual and customary in the given casé. And it must follow, that if he rely upon usage and custom for the rate of compensation, and they allow none in the given case, he will be entitled to none, unless, indeed, he had stipulated *457 for it; and in that case, his right would rest, not upon usage, but the express agreement.
It was, and is, the custom and usage of steamboats on the Mississippi, to carry funds, in the shape of bank bills, checks, bills of exchange, and gold and silver. A vast amount of remittances are made in this way, amounting, no doubt, to many millions per annum, in that particular trade. Boats, plying incessantly on the river, furnish the most safe, rapid, and convenient mode of transmission, that can be made available for such purpose.
It would seem, that for service of this description, so valuable to the owner of the funds, and imposing so much care and responsibility on the carrier, that he should, in common justice, be entitled to compensation, as in other cases. It is invariably charged for carrying gold and silver; but it seems that the usage is not uniform in regard to funds of the other descriptions before stated.
It may be, and probably is the case, that there is no fixed and well established usage on the subject; in that case, we should consider the carrier entitled to compensation, as upon an agreement implied. This should be so, upon principle, if there be no established usage to the contrary. The question of fact will be submitted to a jury, and the case, in this respect, will depend upon their decision.
In the next place, if the defendant is not to be regarded as a common carrier, but as a mere mandatary, is he liable in that character for negligence in the non-delivery of the goods. As a general rule, a mandatary, whose engagement is merely gratuitous, is bound only to ordinary diligence, and liable only for gross neglect, or a breach of good faith.
It is, however, a well settled rule, that if a mandatary enter upon the execution or business submitted to him, he is bound to use a degree of diligence and attention adequate to the *458 performance of his undertaking, — if he do not, and damage ensue, he is liable to the mandator for his misfeasance.
The question is, whether the defendant, who had undertaken to deliver the package, used a degree of diligence and attention, adequate to the performance of the trust.
We make no question, but that the clerk was competent to assume and undertake the trust for the master of the boat. This power resulted as well from usage as from the agency in which he was engaged.
The package was delivered to Vanderslip in the manner we have stated. It would have been better dilligence if it had not been entrusted to any one not connected with the boat. He was a mere volunteer, entrusted only for the special purpose, when it does not appear that it was necessary to do so, or that it was the usage in such cases, or that the mandator had any reason to suppose that the package would be entrusted to the care and diligence of any one not connected with the boat.
We do not say, that this circumstance is sufficient, in itself, to render the defendant liable; it is an important fact, however, to be considered by the jury, with other circumstances, in determining the question of diligence involved in the case.
In the last place we observe, that the judge in his charge has assumed to answer both the questions of law and the questions of fact involved in the case. This was error. It was competent for him to state the evidence and declare the law; leaving the deductions of fact exclusively to the jury.
The judgment will be reversed, and the cause remanded.